Signed: August 04, 2009



_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    No. 08-47463 TG
                                         Chapter 13
MARYLON BOYD,

         Debtor.
_____/

**MEMORANDUM OF DECISION**

An evidentiary hearing was conducted on June 17, 2009 on certain issues raised by the objection to confirmation of the above-captioned debtor's (the "Debtor") chapter 13 plan (the "Plan") filed by the City and County of San Francisco (the "City"), an unsecured creditor. Appearances were stated on the record. At the conclusion of the hearing, the Court took the matter under submission. The Court's findings and conclusions are set forth below.

**DISCUSSION**

**A. SUMMARY OF FACTS AND PROCEDURAL HISTORY**

In 1994, the Debtor married Preston DuFauchard ("DuFauchard"). Both the Debtor and DuFauchard are attorneys. Since their marriage, the Debtor and DuFauchard have maintained separate bank accounts and paid for their own expenses. However, they have never executed a

written agreement transmuting their community property into separate property.

In 1996, DuFauchard purchased a residence located at 12300 Elvessa St., Oakland, California (the "House") where the Debtor and DuFauchard reside. The purchase price was $280,000. DuFauchard used his separate property savings to make the $14,000 down payment and took out a loan to pay the balance of the purchase price. He was the sole signatory on the promissory note. The House was placed in his name alone. The Debtor executed an interspousal deed, disclaiming any interest in the House. She executed similar deeds later when the deed of trust was refinanced and when DuFauchard placed an equity line of credit on the House as a junior lien. DuFauchard has made all the mortgage payments as well as all the other payments related to the House expenses from his income.

In 2004, the Debtor, as executor for the estate of her deceased son, filed a lawsuit against the City and County of San Francisco (the "City"), alleging that the City had used excessive force, leading to her son's death. The Debtor did not prevail in the action, and in 2008 the City was awarded a judgment for costs against her for approximately $120,000 (the "Judgment"). The Judgment is currently on appeal to the Ninth Circuit Court of Appeals.

After entry of the Judgment, the City began enforcement efforts, including efforts to enforce the Judgment against the House. In response, the Debtor filed a chapter 13 petition. This case was quickly dismissed due to certain technical deficiencies. The Debtor then filed a second chapter 13 petition, commencing the above-

2

captioned case. The City filed a motion to dismiss based on the Debtor's failure to list DuFauchard's income on Schedule I, among other things. This motion was withdrawn when the Debtor filed an amended Schedule I.

The Debtor filed the Plan on the petition date. The Plan proposed to pay the chapter 13 trustee $500 per month for 60 months for a total of $30,000. The City filed an objection to confirmation on the ground, among other things, that the Plan did not meet the "best interests" test.[1] The City asserted that, according to its calculations, the Plan would pay only approximately 11.6 percent of its claim. It contended that the bankruptcy estate had an interest in the House and that the House had been undervalued in the Schedules. It claimed that, if the Debtor's interest in the House were liquidated, unsecured creditors could be paid in full.

**B. STATEMENT OF ISSUES AND LEGAL ANALYSIS**

    **1. Is the House Property of the Estate?**

Under California law, there is a presumption that real property acquired during marriage is community property. See Cal. Fam. Code § 760. However, property purchased with the separate property funds of one spouse is ordinarily the separate property of that spouse. See In re Marriage of Mix, 14 Cal. 3d 604, 610 (1975); In re Marriage of Aufmuth, 89 Cal. App. 3d 446, 454 (1979). Here, the evidence is undisputed that DuFauchard purchased the House with his separate

---

[1] The "best interests" test requires the Plan to make payments to unsecured creditors with a present value equal to the payments they would receive in a chapter 7 liquidation. See 11 U.S.C. § 1325(a)(4).

3

property funds and that he was the sole person obligated for the promissory note evidencing the debt for the balance of the purchase price. Moreover, the Debtor repeatedly executed deeds disclaiming any interest in the House. This evidence compels the conclusion that the House at all times remained DuFauchard's separate property.

However, California law holds that, when community property income is used to pay down the principal on a debt secured by real property that is the separate property of one spouse, the community obtains an interest in the real property to the extent of the community property contributions plus a proportionate share in any appreciation.[2] The proportionate share in the appreciation is determined by comparing the amount of the community property contributions with the amount of the separate property contributions. The separate property contributions include both the separate property down payment and any remaining balance on the promissory note for which the one spouse is solely liable. See In re Marriage of Moore, 28 Cal. 3d 366, 373-74 (1980) and In re Marriage of Marsden, 130 Cal. App. 3d 426 (1982)(hereinafter "Moore-Marsden"). Moreover, the entire community property interest in the House is property of the Debtor's bankruptcy estate, not just the Debtor's one-half share of that interest. See 11 U.S.C. § 541(a)(2).

---

[2] Under California law, income from either spouse's personal services is community property. State Board of Equalization v. Woo, 82 Cal. App. 4th 481, 483 (2000). The Debtor and DuFauchard attempted to persuade the Court that they had agreed to keep their income as their separate property. The Court believed them. However, under California law, their agreement was not effective law because it was not in writing. See Cal. Fam. Code § 852(a).

4

The evidence presented established that DuFauchard made a $14,000 down payment for the House from his separate property funds and that there was a $197,000 balance on the promissory note for a total of $211,000 in separate property contributions. The evidence presented established that the community property contributions, consisting of payments on the promissory note from DuFauchard's income, totalled $69,000. The total of the contributions, from both community and separate property, is $280,000. The community property contributions represent 24.6 percent of this amount. Thus, the bankruptcy estate is entitled to reimbursement of the $69,000 in contributions plus 24.6 percent of any appreciation.

It is undisputed that the original purchase price was $280,000. However, the current value of the House was a hotly contested issue. Both the Debtor and the City called appraisers as expert witnesses and introduced their appraisal reports into evidence. The Debtor's appraiser appraised the House as having a value of $430,000 as of March 17, 2009. The City's appraiser appraised the House as having a value of $710,000 as of December 16, 2008. The City contended that the earlier date, which was the date the bankruptcy petition was filed, was the appropriate one to use.

The City contended the petition date was the proper date for valuation. The Court has researched the issue of the appropriate date to use for valuation purposes. It concludes that the proper date is the hearing date of June 17, 2009.[3] Because neither appraiser

---

[3]Although there is no controlling precedent on this issue, the bulk of the reported cases that the Court could find concluded that

5

used this date as the date for his valuation, the Court is forced to speculate to some extent about the value of the House as of the hearing date.

The Court found the City's appraiser's testimony and report more persuasive. There is a well known adage that one picture is worth a thousand words. A comparison of the photographs of the House with the photographs of the Debtor's appraiser's comparables persuaded the Court that the valuation placed on the House by the Debtor's appraiser was substantially too low. As a consequence, the Court will use the City's $710,000 appraisal as a starting point.

The Debtor's appraiser testified that property values in the general area were declining during the relevant period by as much as thirty percent. However, the Court was persuaded by the City's appraiser's testimony that this figure was skewed because the area used to calculate it was too large. While many areas were experiencing substantially declining values, the values of the area where the House was located were dropping only slightly.

Based on this testimony, the Court concludes that the $710,000 figure should be reduced by five percent to account for the six months that elapsed between the effective date of the valuation and

---

either the hearing date or a later date, such as the date the plan was confirmed or the date the confirmation became final, as the appropriate date for valuation. See In re Blobaum, 34 B.R. 962, 964 (Bankr. W.D.Mo. 1983); In re Fulcher, 15 B.R. 446, 448 (Bankr. D.Kan. 1981); see also In re Crain, 243 B.R. 75, 85 (Bankr. C.D. Cal. 1999)(holding that the effective date of the plan was the appropriate date but using the hearing date for practical reasons); accord See In re Hopwood, 124 B.R. 82, 85 (E.D. Mo. 1991)(affirming the bankruptcy court).

6

the hearing date.  Thus, the Court finds that the value of the House on the hearing date was $674,500 ($710,000 less $35,500).  This means that the House has appreciated in value by $394,500 ($674,500 less $280,000).  The estate's interest in the appreciation is 24.6 percent of this amount or $97,047.  However, the estate's interest in the House also includes the $69,000 in community property contributions for a total of $166,047.  Since the Court has determined that the value of the House is $674,500, this represents 24.6 percent of its value.

In a chapter 7 case, the trustee would probably be able to sell the House as co-owned property so as to realize the value of the estate's interest for the benefit of creditors.  See 11 U.S.C. § 363(h).  However, the liquidation proceeds would be reduced by any liens against the House and by the costs of sale as well as other administrative expenses.  Evidence was presented that the liens against the House total $413,000.  The Court estimates that the sale proceeds would be further reduced by costs of sale which are normally calculated as eight percent of the sale price or $53,960.  Thus, the net sale proceeds would be $674,500 less $466,960 or $207,540.

However, the bankruptcy estate would not be entitled to take its $166,047 share of the appreciation from the net sale proceeds, effectively requiring DuFauchard's separate property interest to bear the entire burden of the liens and costs of sale.  Instead, the estate's $166,047 interest must be compared to the current value to determine the percentage of the net sale proceeds to which the estate would be entitled.  As stated above, $166,047 equals approximately

7

24.6 percent of the $674,500 current value of the House. Thus, the bankruptcy estate would be entitled to claim only 24.6 percent of the $207,540 in net sale proceeds or $51,054.84. From this amount, administrative expenses would be deducted, including the trustee's fees and undoubtedly also legal expenses for litigating the adversary proceeding seeking to sell co-owned property. The Court estimates that these fees and expenses would be at least $7,500. Thus, in chapter 7 the unsecured creditors would be likely to receive $43,554.84.

The Plan proposes to pay the chapter 13 trustee only $30,000 over 60 months, which is less than the unsecured creditors would receive in a chapter 7 case according to this calculation. Moreover, the present value of the proposed payments is not equal to even $30,000 and there is no assurance that the unsecured creditors would receive even $30,000 in payments. As a result, the objection to confirmation of the Plan must be sustained. Unless the Debtor is able to modify the Plan to satisfy this legal requirement, the case will have to be dismissed or converted to chapter 7 of the Bankruptcy Code.

**CONCLUSION**

The City's objection to confirmation will be sustained. The City is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

Marylon M. Boyd
11230 Elvessa Street
Oakland, CA 94605

Fayedine Coulter
Law Offices of Fayedine Coulter
1425 Leimert Bl., #306
Oakland, CA 94602

David J. Cook
Cook Collection Attorneys
165 Fell St.
San Francisco, CA 94102

Martha G. Bronitsky
P.O. Box 5004
Hayward, CA 94540-5004